# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 16-435V

* * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| JASON GUIDO, parent and natural guardian of D.G., a minor, | |
| | Filed: August 25, 2017 |
| Petitioner, | |
| v. | Ruling Denying Respondent's Motion to Dismiss |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### RULING DENYING RESPONDENT'S MOTION TO DISMISS

**HASTINGS,** *Special Master*.

      This is an action in which Jason Guido ("Petitioner") requests compensation under the National Vaccine Injury Compensation Program (hereinafter "the Program"[1]), on behalf of his minor son, D.G., for injuries allegedly suffered from the diphtheria-tetanus-acellular pertussis (DTaP) and meningococcal vaccinations he received. Petitioner alleged that D.G. suffered from immune thrombocytopenic purpura that was "caused-in-fact" by the above-stated vaccinations. After careful consideration, I hereby deny Respondent's Motion to Dismiss, for the reasons set forth below.

### I

### FACTUAL BACKGROUND

      D.G. was born on July 18, 2001. (Petition at ¶1.) D.G. received the DTaP and meningococcal vaccinations on January 2, 2014. (*See* Ex. 3.) According to the Petition, approximately 14 days after receiving these vaccinations, D.G developed symptoms such as bumpy red rashes, bleeding gums, and bruising. (Petition at ¶ 4.) On March 12, 2014, D.G. visited MedExpress to complain of a sore throat, rash, and ecchymosis. (*See* Ex. 4.)

---

[1]     The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). I will also sometimes refer to the statutory provisions defining the program as the "Vaccine Act."

1

On that same day, D.G. was diagnosed with acute ITP[2] at the Emergency Department of Children's Hospital of Pittsburgh ("Children's Hospital"), after laboratory tests revealed his very low platelet count. (Ex. 5(a), pp. 30-32.)  Immediately following his ITP diagnosis, D.G. was prescribed Prednisone for one week, which proved to be ineffective. (Ex. 5(a), p. 67.)  D.G. received IVIG therapy on March 27, 2014, at the Children's Hospital, for which he was hospitalized overnight and released the next day. (Ex. 5.)

Subsequently, weekly blood screenings were prescribed for D.G., until June 12, 2014, followed by less frequent blood tests until September 11, 2014. (*See* Ex. 7.)  D.G was sent home from school on April 28, 2014, because of a nosebleed that lasted for about five minutes. (Ex. 6, pp. 55.)  Also on that date, D.G. had some erythema to his face, but otherwise denied any other symptom. *(Id.)*  D.G. "otherwise has been feeling well" *(Id.)* His platelet count also increased from 65,000 on April 23, 2014, to a normal platelet count of 307,000 on April 28, 2014. (*Id.*, pp. 56, 58, 69, 81, 89.)

## II

## PROCEDURAL HISTORY

On April 6, 2016, Jason Guido filed a Petition on behalf of his minor son, D.G, under the Vaccine Act. 42 U.S.C. §§ 300aa-1 to 300aa-34. (ECF No. 1.)  Petitioner alleged that D.G. developed ITP as a result of his DTaP and meningococcal vaccinations of January 2, 2014. I was assigned this case on April 7, 2016. (ECF No. 4.)

On June 1, 2016, Petitioner filed medical records (ECF No. 8), followed by a Statement of Completion on June 2, 2016. (ECF No. 9.)  On October 3, 2016, Respondent file her Rule 4(c) report, claiming that compensation under the Vaccine Act is not appropriate in this case. (ECF No. 13.)

On December 2, 2016, Petitioner filed a Reply Memorandum to Respondent's Report (ECF No.18), accompanied by an amended exhibit list containing more of D.G.'s medical records (ECF No. 16).  On January 23, 2017, Respondent filed a Response to Petitioner's Reply, and moved to dismiss the case, on the ground that D.G. did not experience symptoms of the alleged vaccine-caused ITP for more than six months (ECF No. 22.)  On March 31, 2017, Petitioner filed a Response to Respondent's response (ECF No. 28), along with affidavits from witnesses and a piece of medical literature (ECF No. 27).

## III

## LEGAL BASIS OF RESPONDENT'S MOTION TO DISMISS-- THE "RESIDUAL EFFECTS" ISSUE ("SIX-MONTH REQUIREMENT")

The Vaccine Injury Act requires a petitioner to demonstrate, by a preponderance of the evidence,that the vaccinee: "sustained an illness, disability injury or condition caused by a vaccine" *and* "(i) suffered the *residual effects* or complications of such illness, disability, injury,

---

[2]   ITP is the abbreviation for "idiopathic thrombocytopenic purpura".  Dorland's Illustrated Medical Dictionary (32nd ed., 2012), p. 1557.

2

or condition *for more than 6 months after the administration of the vaccine*; or (ii) that the vaccinee had died from the injury; or (iii) that the vaccine injury necessitated inpatient hospitalization and surgery." *See* 42 U.S.C. § 300aa–11(c)(1)(D)(i) (emphasis added).

The U.S. Court of Appeals for the Federal Circuit has observed that:

> Congress included the six month petition requirement 'to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine.' H.R. Rep. No. 100-391 (I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, –373.  Thus, this provision, along with the other petition requirements, is intended to restrict eligibility to the compensation program.

*Cloer v. HHS*, 654 F.3d 1322, 1335 (Fed.Cir. 2011) (en banc), *aff'd*, 133 S.Ct. 1886 (2013).

## IV

## ANALYSIS OF "RESIDUAL EFFECTS" ISSUE

Since D.G. is currently alive and his ITP did not require surgical intervention[3], to be eligible for compensation pursuant to the "residual effects" statutory requirement, D.G. must have suffered residual effects of his ITP on or after July 3, 2014, more than six months after D.G's vaccinations of January 2, 2014.  Only the symptoms manifested due to the vaccine-related injury are the "residual effects" of that injury. *Parsley v. HHS*, No. 08–78v, 2011 WL 2463539, at *16 (Fed.Cl. May 27, 2011) (defining "residual effect," according to medical definition, as "something left behind or resulting from an illness, disability, injury or condition").

Respondent argues that, based upon the record of this case, it is clear that D.G. did not suffer "residual effects" of his ITP more than six months after receiving his DTaP and meningococcal vaccinations. I cannot agree.

To be sure, as Respondent argues, after April 28, 2014, D.G. continued his prescribed blood screenings until September 17, 2014, and each of the lab results for blood screening from May 4, 2014, onwards, showed a *normal* platelet count. (Ex. 6, pp. 2-3, 43-51.)  Further, D.G.'s medical records also do not indicate that he received additional treatment of his ITP after April 28, 2014.  Having a normal platelet count and receiving no treatment in the summer of 2014 would indeed support the argument that D.G. did not suffer residual effects of his ITP for more than six months after receiving the vaccinations, just as the situation was with the *Crabbe* case.

In a case somewhat similar to the matter under consideration here, *Crabbe v. HHS,* No. 10-762V, 2011 WL 4436724, at *4 (Fed. Cl. Aug. 26, 2011), a 14-month-old child was also diagnosed with ITP, 17 days after receiving the MMR vaccine.  Special Master Vowell dismissed the case because the injured child "did not suffer 'residual effects' of ITP after his platelet counts normalized, and he was no longer taking any drugs to correct his platelet count." (*Id.*)  That special master noted that symptoms of a rash or petechiae, accompanied by a low platelet count, would demonstrate a return of his ITP, but the injured child in *Crabbe* never demonstrated either.

---

[3]     D.G. was hospitalized on March 27, 2014, for his IVIG treatment, and was released the next day on March 28, 2014. (Ex. 5.)  Apparently, no "surgery" was performed. (*Id.*)

In this regard, I agree with Special Master Vowell that the mere *testing* for a possible recurrence of D.G's ITP, via the regular blood screenings for his platelet count, does *not* qualify as a "residual effect" within the meaning of the statute. Legislative history describes that the six-month provision requires a vaccinee to "suffer ongoing disabilities," suggesting that the committee viewed a "residual effect" as more concrete than just an increased risk of re-occurrence of the injury. *See* H.R. Rep. No. 100-391 (I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, –373.

However, the Children's Hospital medical records from D.G.'s follow-up visit on September 17, 2014 suggest that D.G. *did* continue to experience *lesser* ITP symptoms, such as being "slow to heal after cuts," "bleeding or bruising easily," and having "nose bleeds" and bleeding gums" since his last visit. (Ex. 5(b), p. 98 of 103.)

Further, Heather Guido, D.G.'s mother, Jamie Guido, D.G.'s stepmother, and Valeria Storar, D.G.'s hockey team manager, all contended in their respective affidavits that D.G. struggled with *fatigue*. (Ex. 8 at ¶ 2; Ex. 9 at ¶ 3; Ex. 10 at ¶ 2.) Petitioner has filed a medical article indicating that fatigue can be a symptom of ITP. (Ex. 12.)

In addition, Valerie Storar stated that "through the summer months of June, July and August 2014, [she] observed several bruises and cuts on [D.G.'s] body that were not typical in appearance were very slow to heal." (Ex. 10 at ¶ 2.) And the months of July and August occurred more than six months after D.G.'s vaccinations on January 2, 2014.

In conclusion, for the reasons set forth above, based on the overall record of this case as it currently stands, I conclude that D.G. *did*, more probably than not, suffer some residual effects of his ITP for more than six months following the vaccinations of January 2, 2014. These effects were D.G.'s ongoing fatigue, slowness in healing from cuts, frequent bruising, nosebleeds, and bleeding gums. Thus, Respondent's pending Motion to Dismiss is hereby denied at this time.

## V

## FURTHER PROCEEDINGS

The parties shall consult each other to determine if this case can be settled, and Petitioner shall file a status report addressing that topic in 60 days. If settlement fails, the next step would likely be for Petitioner to obtain an expert report addressing the "causation" issue.

**IT IS SO ORDERED.**

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master